**In re the Marriage of Frederick TRU-DEN, Respondent-Appellant,**

v.

**Rebecca Truden (JACQUAY), Petitioner-Appellee.**

No. 3–1084 A 292.

Court of Appeals of Indiana,
Third District.

July 25, 1985.

Cornelius B. (Neil) Hayes, Hayes, Swift & Finlayson, Fort Wayne, for respondent-appellant.

Daniel J. Graly, John F. Lyons, Barrett, Barrett & McNagny, Fort Wayne, for petitioner-appellee.

STATON, Presiding Judge.

Frederick Truden (Truden) appeals a trial court order modifying visitation with his three minor children who are in the custody of their mother, Rebecca Truden Jacquay (Jacquay).

■ Consolidated and restated, the following issues are presented for review:[1]

---

**1.** Truden also claims error in the trial court's failure to appoint a third party supervisor when the parties could not agree on one. Family and children's services was appointed on January

I. Did the trial court err in excluding Truden's "motive" evidence?

II. Did the trial court err in failing to ask the minor children questions submitted by Truden for an in camera interview of the children?

III. Did the trial court err in refusing to make a record of the in camera interview or relate to the parties the children's comments?

IV. Were the trial court's Findings of Fact and Conclusions of Law contrary to or unsupported by the evidence?

V. Did the trial court err in excluding Truden's "newly discovered evidence" at the hearing on Truden's Motion to Correct Errors?

The trial court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation might endanger the child's physical health or significantly impair his emotional development. IC 31–1–11.5–24(b).

■ In reviewing a trial court's determination of custody and visitation rights, this Court will reverse only upon a showing of manifest abuse of the trial court's discretion and such abuse will not be found unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749, 755. We will not weigh conflicting evidence or judge the credibility of witnesses, for these are matters particularly within the trial court's province. *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850, 851.

The evidence which supports the trial court's decision reveals that the Truden's marriage was dissolved on April 5, 1983. Custody of the three minor children, Mi-

chael, Marissa and Mitchell,[2] was awarded to Jacquay. Truden was permitted visitation on alternate weekends, one evening each week, alternating holidays and one week during the summer. Truden exercised his visitation until early May, 1984. On May 6, the children returned from their weekend visitation with their father and while their mother and stepfather were putting the two younger children to bed both became very upset. Upon questioning, the oldest child, Michael, broke down crying and related to his mother that he couldn't take it anymore; that his father had been hitting and hurting him. He related several specific incidents in which he said his father hit him in the groin, hit him in the back, elbowed him in the stomach, punched him in the stomach knocking the wind out of him and kicked him in the shin during a game of tackle. Michael told his mother that such physical abuse occurred during every weekend visitation. He also said his father frequently called him derogatory names such as "wimp", "jerk", "sissy", "asshole", and "fucker." Michael told his mother the reason he had not told her before was that he was afraid his father would hit him or hurt him, or that he would "kill him."

Jacquay examined Michael that evening and found knuckle marks on his back where Michael said his father had hit him for spilling milk.

On May 15 Jacquay filed a Petition for Permanent Suspension and/or Restriction of Visitation Rights and a Petition for Emergency Ex-Parte Suspension of Visitation Rights. Later, the same day Truden filed a Verified Information for Contempt, Petition for Modification of Child Support and Request for Clarification of Visitation Order, all concerning matters contained in the original dissolution decree over which the parties were in dispute.

10, 1985 to supervise Truden's visitation with his children, therefore the issue is moot. The doctrine of mootness mandates that a court will not consider a question upon which no effective relief can be rendered. *Bartholomew County Hosp. v. Ryan* (1982), Ind.App., 440 N.E.2d 754.

**2.** At the time of the modification proceedings the children were 10, 5 and 3 years old respectively.

On May 16 the court vacated the Ex-Parte Order suspending visitation and set May 23 for hearing on the ·Petition for Permanent Suspension. Jacquay subsequently filed a Petition to Interview Minor Children in Chambers.

The parties presented evidence on May 23 and June 6 and the trial judge interviewed Michael and Marissa in Chambers on June 8. Both parties submitted proposed Findings of Fact and Conclusions of Law and the court issued its order on June 29. From May 16 to June 29 Truden exercised his regular visitation.

In its order the court concluded that Truden's actions, both physically and verbally, had endangered and might continue to endanger Michael's physical health and constituted a significant impairment of Michael's emotional development. The court also held that Marissa and Mitchell were similarly endangered, directly and by exposure to the abuse of Michael. The court restricted Truden's visitation to alternate Saturdays from 9:00 a.m. until 8:00 p.m. subject to the availability of a third party supervisor.

Jacquay's evidence consisted of her own and her present husband's testimony regarding Michael's revelations, including the fact that Truden spanked three year old Mitchell whenever he wet himself. Jacquay also testified that Marissa suffered nightmares for two or three days after returning from a visitation with ·Truden. Too, Marissa was having trouble relating to playmates and nursery school and was extremely dependent on Jacquay. She said that Mitch likewise had nightmares and crying spells after visitation and was experiencing difficulty with bedwetting and toilet training.

Dr. Jere Leib, a clinical psychologist who had treated Michael immediately after the divorce and again shortly before the modification hearing, testified that Michael had indicated places on his body where his father had hit him and that Michael

"... is experiencing considerable distress, apprehension, fear, about ongoing contacts with his father, that he is antici-pating in a frightening way, that he will experience some verbal and a physical punishment toward him, and has considerable fear of spending time with his father in a lone situation...."

Trial Record at 183.

It was Dr. Leib's opinion that continued unsupervised visitation for Michael posed a potential for physical or psychological damage to him. He also opined that exposure to Michael's experiences was.likely to have an "unfavorable impact," a "damaging effect" on the two younger children. He recommended that visitation be either in the presence of a third party or in a public place.

Michael Morone, a close friend of Truden's since grade school, testified that he had heard Truden on a perhaps a dozen occasions, call Michael a wimp or stupid. He testified that it was common for Truden to call Michael a jerk or stupid.

Truden denied ever punching any of his children and characterized any instances of physical contact as discipline, warranted under the particular circumstances. He said he loved his children and found them a joy to be around most of the time. He denied using derogatory names to berate his children, but said he might say something like "Don't be a wimp" or "Don't be a sissy."

A friend of Truden's, Lita Till, said she had heard him call his children names when they were "acting up or doing something they shouldn't have been doing;" but she denied ever seeing him punch any of his children. She found nothing out of the ordinary in the way Truden corrected his children.

Till's mother, Audrey Hershberger, related that she had been in the company of Truden and his children nine or ten times for an hour or so at a time and had never heard him berate the children or seen him physically discipline them.

### I.

#### Motive Evidence

During the hearing Truden sought to examine the attorney who represented him

in the dissolution proceedings, Perry Shilts. The trial judge reiterated an earlier ruling that the issues would be limited to visitation and the allegations behind the Petition to Suspend Visitation. Truden claims that Shilt's testimony was relevant on the issue of Jacquay's motives behind filing the petition; he claimed that she was motivated by the parties' disputes over the property settlement agreement and weeknight visitation.

■■■ The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *Babson Bros. Co. v. Tipstar Corp.* (1983), Ind.App., 446 N.E.2d 11, 16. A trial court's determination is required to rest upon relevant evidence and to the extent practicable irrelevant evidence should be excluded. Relevance is the logical tendency of evidence to prove a material fact, *Lake County Council v. Arredondo* (1977), 266 Ind. 318, 363 N.E.2d 218, 220, and we conclude in the case at bar that we agree with the trial court that "motive" evidence is irrelevant to the issues of child abuse and visitation. The court repeatedly limited the evidence to that which had a bearing on the allegations in the petition—that mistreatment of the children required a modification of visitation. We do not find that evidence of the parents' ongoing disputes has a tendency to prove or disprove those allegations. Moreover Truden cites no authority to support such a proposition. Accordingly, we find no error in the trial court's exclusion of the "motive" evidence.

## II, III

### In Camera Interview

The parties agreed to have the court interview the children separately, in chambers without counsel or the parties present. However, Truden requested that the conversations be on the record so that he would have an opportunity to rebut anything the children might say. He also submitted questions which he requested the judge to ask each of the children. The judge ruled that the interviews would not be recorded so that the parents could not later confront the children. The judge also indicated that he would use his discretion in deciding what questions to ask the children, stating:

> "I will not follow the line that you've submitted to me, but from the testimony that each side has presented, I see the picture that's here, and then I will interrogate Michael in my own discretionary way on questions that I think pertain to visitation, and the things that are mostly questions that he may be worried about, or afraid to say something wrong about either parent."

Trial Record at 409.

The custody statute, IC 31–1–11.5–21(a)(3), provides that the court shall determine the best interests of the child, taking into consideration, among other factors, the wishes of the child. The court is permitted to:

> "... interview the child in chambers to ascertain the child's wishes. The court may permit counsel to be present at the interview, in which event a record may be made of the interview and the same may be made part of the record for purposes of appeal."

IC 31–1–11.5–21(d).

■■■ While custody and visitation are not necessarily synonymous, it is obvious that the interview procedure is just as useful in modification of visitation where the court must determine the best interests of the child as in the determination of custody. The provision for in-chambers interviews with minor children allows the judge to fulfill his duty without placing the child in an adversative position between battling parents. It is for the judge to determine the weight and credibility to be accorded a child's disclosures, and it is obvious that this determination is facilitated by assurances to the child that his conversations will be strictly confidential.

■■■ The precatory language of the statute gives the trial court full discretion in deciding whether counsel should be present or whether the interview should be recorded, and we believe this is sound policy.

It is true that a judgment based solely upon an extra-judicial inquiry can not stand. *Watkins v. Watkins* (1943), 221 Ind. 293, 47 N.E.2d 606. However, in the very special case of child custody or visitation the situation is somewhat different and the Indiana Supreme Court has addressed the issue decisively in *Blue v. Brooks* (1973), 261 Ind. 338, 303 N.E.2d 269. The Court reasoned that confidential interviews between the court and children should be encouraged in the interest of better enabling the trial court to ascertain the best interests of the child without the constraints of open court with parents and witnesses present. The Court held that so long as the trial court's decision does not rest primarily upon the results of a private interview, it is not error to exclude the results of the interview from the record. *Id.*, 303 N.E.2d at 272. Upon examination of the entire record, the Court found substantial evidence to support the trial court's judgment and therefore no error in excluding the results of the interview. *Id.*

Just as the appellant in *Blue* argued, Truden argues the trial court's judgment was based upon the results of the interview. In support of this contention he points to the fact that the children were not interviewed until after the formal hearing had concluded. He reasons that if there had been substantial evidence presented at trial to support suspension of visitation, then the court would not have allowed visitation to continue until issuing its order on June 29, but would have suspended visitation immediately. Indeed, he argues, the court would be obligated to suspend visitation if convinced by the evidence that the children were endangered. While we cannot know the court's reasons for allowing visitation to continue until issuing the order, we do not find Truden's argument compelling. In fact, if the interviews had been the sole basis of the decision, then by Truden's reasoning the court would have suspended visitation on June 8 immediately after interviewing the children. Rather we find it more reasonable to conclude that the trial court made its determination after careful consideration of *all* the evidence and concluded that the evidence weighed in favor of suspension. Even if the interviews were a crucial factor in the trial court's determination, substantial evidence appears on the record to support the judgment.

With regard to what questions the judge asks the child, we again defer to the trial court's discretion. The judge's purpose in interviewing the child is to be enlightened on the child's point of view. In this case the judge had heard the evidence of both parents and was fully apprised of the issues and contentions of each. We must presume that his inquiries of the children were grounded upon those issues and were conducted accordingly. The fact that he may not have asked each and every question propounded by the father does not demonstrate an abuse of discretion or a denial of any rights of the father. The father's attempt to direct the questions put to the children and to offer rebuttal to their responses would put the children in precisely the sort of adversative position the statute seeks to avoid. We find no error in the trial court's handling of the in camera interview.

## IV.

### Sufficiency of the Evidence

We have very carefully reviewed the entire record and the testimony of each witness. There are occasional conflicts in some of the evidence, however the trial court went to some lengths to explain the weight given to various testimony, including the facts that Truden's testimony lacked credibility, and that Hershberger's testimony was given little weight because of her minimal contacts with Truden and the children. Truden's arguments go primarily to the weight of the evidence: claiming Jacquay's testimony was self-serving; Hershberger's testimony was improperly discounted; Till's testimony was misconstrued by the court; and that Leib personally spent only twenty minutes consulting with Michael in the two visits immediately prior to trial. (Leib testified that he and

his professional staff spent, in total, considerably more than twenty minutes on Michael's case.) As we have already noted, it is not this Court's function to weigh the evidence; the trial court has already exercised that function and in our opinion, very carefully.

Truden characterizes the evidence as "a few isolated incidents" of parenting with which the mother happens to disagree. However, unlike the case of *Smith v. Dawson* (1982), Ind.App. 431 N.E.2d 850, cited by Truden, in which there was but a single incident alleged; here, there is substantial evidence on the record to support a pattern of "parenting" which has been and may continue to be unhealthy physically and emotionally for these children. It is clearly not necessary for the court to find that children have been beaten and bloodied before concluding that their physical health is endangered or emotional development significantly impaired.

Truden argues that the Findings based on Dr. Leib's testimony are erroneous. Our review of the record discloses that Leib testified that he had an effective rapport with Michael who was comfortable in sharing and verbalizing his emotions. (TR. at 192). He said Michael had defined the areas where he had been hit, pointing to various parts of his body. He also concluded that Michael had been the object of verbal aggression by his father (TR. at 198) and that there was the potential for physical or psychological damage to Michael. (TR. at 184). Leib did not specifically say there was a potential for physical abuse of the younger children, but he said there was likely to be an unfavorable impact or damaging effect on them from Michael's experiences. Though the court has phrased the findings in its own words, we do not find them erroneous.

There was substantially more evidence regarding Truden's actions toward Michael than his actions toward the other two children; however the evidence regarding their emotional difficulties was uncontradicted as was the evidence that Truden spanks Mitchell whenever he wets himself or wets the bed.

When all the evidence is viewed as a whole, we conclude that there was substantial probative evidence to support the court's order for supervised visitation.

## V.

### Newly Discovered Evidence

■ The final issue raised by Truden concerns the court's refusal to hear so-called "newly discovered evidence" at the hearing on his Motion to Correct Errors. He argues that since he could not have known of the order in advance, its alleged unworkability is newly discovered evidence which should have been considered at the Motion to Correct Errors hearing. Admittedly there were lengthy and unfortunate delays in appointing a third party supervisor, and Truden was prevented from visiting with his children during much of that time. We do not believe, however, that those circumstances constitute "newly discovered evidence" going to the underlying merits of the trial court's decision.

The concept of supervised visitation, albeit cumbersome, is not inherently unworkable, and it is certainly a reasonable alternative to no visitation at all which the court might have ordered based on the evidence at trial. We do not condone the long delays involved in implementing the order, some of which may have been caused by the parties, but there is nothing in Truden's affidavit outlining his frustrated attempts to communicate with his children during the delay which would, upon retrial, lead to a different result. We find no error in the trial court's refusal to hear evidence on the unworkability of an order which had not yet, but eventually was, in fact, implemented.

The judgment of the trial court is in all things affirmed.

HOFFMAN and GARRARD, JJ., concur.