**Mary C. LUCHT, Appellant (Respondent Below)**

v.

**Harold A. LUCHT, Appellee (Petitioner Below).**

**No. 43A03–8911–CV–509.**

Court of Appeals of Indiana, Third District.

June 14, 1990.

STATON, Judge.

Mary Lucht appeals the decision of the trial court granting Harold Lucht's petition to modify the custody of their son Peter. Mary presents one issue for our review:

Whether there was sufficient evidence to show a substantial and continuing change of circumstances making the original custody order unreasonable?

We reverse.

The marriage of Mary C. Lucht and Harold Allen Lucht was dissolved on December 23, 1986. The dissolution decree provided for joint legal custody for their son Peter who was born July 13, 1983; Mary was awarded physical custody. At the time of the dissolution the parties lived in Warsaw, Indiana.

Not quite one year after the dissolution, in September 1987, Mary and Peter moved to Indianapolis. Harold immediately filed a petition to modify decree asking for physical custody of Peter. The trial court denied Harold physical custody but modified the visitation order.

Approximately one year later, Mary notified Harold and the trial court of her intention to move to Colorado "because of employment advancement." R. 29. Shortly after this notification Mary and Peter moved to Colorado. Harold again petitioned the trial court to modify the decree by giving him physical custody of Peter. A few weeks after Harold's petition was filed, on August 31, 1988, Mary returned to Indiana for a hearing on Harold's motion to modify custody. At this hearing Mary testified that she would move back to Indianapolis if necessary. R. 249. Less than two weeks after the hearing, on September 9, 1988, the trial court issued an order which stated in part that:

> Respondent [Mary] has failed to show that Peter has benefited by his move to Indianapolis or how he would be benefited by living in Colorado.

> This Court finds that Respondent has offered to return with Peter and live in Indianapolis, where she has a job waiting, if the Court does not approve the move to Colorado.

> This Court finds that the move to Colorado by Respondent was primarily a career move on her part but that it is not in the best interests of Peter, that he live in Colorado ... The Court finds that there is a substantial change of circumstances which are not in the best interests of the child, Peter, namely, the moving of Respondent and Peter to Colorado; however, that change in circumstances must be continuing for the Court to grant a change in the custody order. Since Respondent has stated in open Court that she would be willing to return to Indianapolis to live, it appears that she should be afforded that opportunity; if that is not done within thirty (30) days from the date of this Ruling, the Court ought to make further Ruling.

It is therefore ruled that Respondent return the child Peter to live with her in Indianapolis, Indiana, or within Indiana where the established visitation as has been exercised by Petitioner in the past may continue, within thirty (30) days of this date and to promptly notify the Court when this has been done; failure on the part of Respondent to make timely compliance with this Ruling will result in the Court making a determination that such substantial change of circumstances is continuing and the making a further ruling with regard to the Petitioner's Petition To Modify Decree.

R. 40–41.

The following month, Mary returned to Indiana with her son, Peter. Although she did not notify the trial court of her arrival in Indiana with her son within the thirty days, she did notify the clerk of the court several weeks later when she had completed her move from Colorado.

Harold petitioned for a Supplemental Ruling alleging that he was unable to locate Mary and Peter. He again requested custody. Harold alleged that he made several phone calls to Colorado attempting to locate Mary and Peter. According to Harold's petition his attempts to locate Peter included the following:

1. Several calls to Mary's apartment in Colorado, from October 8 through October 21.

2. A call to Mary's place of employment where he was advised that she had resigned and instructed her former employer to send her final paycheck to her stepfather in West Lafayette.

3. On October 13, Harold called the police department in the Colorado town where Mary had been living and persuaded them to dispatch a police car to Mary's former residence.

4. Harold contacted the local Colorado post office and received a forwarding address for Mary in West Lafayette.

R. 44–46

Approximately 3 weeks later, Mary's attorney filed a document entitled "Information To The Court" which stated that Mary and Peter had moved to the apartment of

her stepfather in West Lafayette on October 9, 1988; that Mary then secured a dwelling in Indianapolis; and, that Mary notified the Clerk of Court on or about October 26, 1988, of her Indianapolis address and phone number.

Two weeks later, Harold again petitioned for modification of custody. He alleged a substantial and continuing change in circumstances which made the original decree unreasonable. A few months later, in February 1989, Mary made a motion to modify decree asking for an increase in support payments. Approximately one week later, on February 22, 1989, there was a hearing on the motions. Several months later, on August 21, 1989, the trial court made the following order:

> The Court having considered all credible submissions NOW FINDS that there is a change of circumstances of continuing character existant [sic] in said cause which is not in the best interests of the minor child i.e. a communications breakdown similar in character to *In Re: Marriage of Cain* (Ind.App. 3 Dist.1989) 540 NE2d 77. It further appearing that the father will be remarrying, that the minor child, Peter, had recent educational problems causing his removal from school in mid-year and the mother has moved to considerable locations since the last order. The minor child needs security and stability. Both parents have unique features of value. The Court believes modification of the joint custody order should be made at this time in order to conform to the proofs adduced. It is, therefore, ordered, adjudged and decreed that physical custody of Peter Alan Lucht, born 7–13–83, shall vest in Harold A. Lucht as of August 28, 1989, subject to the right of Mary C. Lucht to see and visit the child at all reasonable and proper times and places. As a minimum reasonable is defined to be alternate weekends (7:00 P.M. Friday through 7:00 P.M. Sunday), Mother's Day, one week of Christmas vacation and six weeks in the summer

> beginning June 21 of each year, unless the parties shall agree on another 6 weeks period. Child to be with his father on Father's day and all major holidays to be alternated. Both grandparents to have reasonable access with Peter. Correspondence, telephone and odd time visitation shall be permitted so long as it is reasonable. Mother and father shall arrange weekends so as to permit mother to be off Community Hospital duties when father is committed to attend U.S. Navy Reserve duties. Joint custody order to continue as modified herein, all until further order of the Court.

R. 120–1.

Except for the scant facts included in the order the trial court made no special findings. Without special findings it is difficult for us to ascertain on what facts the trial court has based its decision. Based on the above order it appears the trial court has applied the wrong standard. The standard to be applied is enunciated in IC 31–1–11.5–22(d) (Burns Code Ed., 1987 Replc.) which states:

> The court[,] in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances.

Therefore, before an existing custody order can be modified the trial court must find that there has been "a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." The trial court made no finding that the existing custody order was unreasonable; to the contrary, the order stated that "[b]oth parents have unique features of value."[1] The evidence sup-

---

1. Our review of the record revealed the following statement made by the Judge to Mary and Harold: "I think you're both concerned about your boy and you're both probably better than average type people I know for parents. If lightening [sic] would strike me and—our youngest daughter's at Purdue, so you wouldn't have to be a step-parent, but I probably

ports this statement. At the February hearing Harold testified as follows:

Q Is it your opinion that Peter's best interest would be best served by placing his custody with you?

A Yes, sir.

Q Why?

A I think this young boy is needing his father right now. Little boys need a guiding hand from a father, or a man. And what little boys think, do and want and I know I can, from my past experience with children and everything, be able to direct him and guide him in the direction he should go.

Q Do you feel that Mary is unable to provide these qualities for—or these needs for Peter?

A I don't believe so.

Q And why not?

A I—she doesn't discipline him when he needs discipline. Times have come when Peter can do no wrong.

Q Do you have any problems as far as stability, home environment, home conditions, those sorts of things?

A In my home, sir?

Q In Mary's home.

A He seems to want to come and visit me. In talking with his teacher—

[hearsay objection sustained with regard to teacher]

Q Do you have any other problems as far as Mary's being able to provide Peter's needs, best interest needs?

A No, sir.

R. 361-2.

It was Harold's burden to show that the existing custody order was unreasonable. IC 31-1-11.5-22(d); *Wible v. Wible* (1964), 245 Ind. 235, 196 N.E.2d 571, 573, *Rehearing Den.* This testimony is not consistent with such a showing; rather, Harold's testimony belies any such claim. In fact, Harold's testimony addresses issues that would be considered in awarding *initial* custody, not a modification of custody.

The trial court too, appears to have considered factors pertaining to an initial determination of custody. See *Walker v.*

wouldn't hesitate to put at an early date any of

*Chatfield* (1990), Ind.App., 553 N.E.2d 490. Initial custody is controlled by IC 31-1-11.-5-21 (Burns Code Ed., 1987 Replc.) which states in part that "[i]n determining the best interest of the child, there shall be *no presumption* favoring either parent." (our emphasis). Whereas, a modification of custody is available only upon "*a showing* of changed circumstances so substantial and continuing as to make the *existing custody order unreasonable.*" IC 31-1-11.5-22(d) (our emphasis). The requirement of a showing that the existing custody order is unreasonable creates a presumption in favor of the custodial parent.

■ Our standard of review is based on whether there was an abuse of discretion. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 887. Therefore, we will not reverse unless the decision of the trial court is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom. *Id.* In order for a change of custody to be warranted "there must be a change in condition from the date of the last order and that the change must be of such a *decisive character* as to make the change necessary for the welfare of the child." *Id.* (our emphasis). It is for the trial judge to determine whether the change has been so substantial and continuing as to make the existing order unreasonable; and upon an affirmative finding, our function is merely to determine whether or not there was substantial probative evidence supportive of that conclusion. *Id.* at 888. The determination as to whether a change is substantial is to be made "in the context of the surrounding circumstances. If, in context it is likely to beget a consequential end result, it must be deemed substantial." *Id.* at 890.

■ The trial court order listed four factual considerations as reasons for a modification of physical custody. If any of these factors support a finding of substantial and continuing circumstances making the existing custody order unreasonable, then the trial court must be affirmed; if not, we

our children with either of you. R. 489.

must reverse for insufficient evidence of probative value to support the conclusion of the trial court.

## 1

### Communication

The trial court referred to a "communications breakdown" similar to the one in *In re Marriage of Cain* (1989), Ind.App., 540 N.E.2d 77. In *Cain* joint custody was initially awarded to the mother and the paternal grandparents; the child lived with the grandparents. The child's mother initiated a proceeding for modification of custody. In granting her petition the trial court determined that the breakdown in communication was so substantial that "the level of cooperation necessary for joint legal custody cannot occur in the hostile environment that exists at the present time between the grandparents and mother." *Cain* at 77. Furthermore, *Cain* involved a dispute between a parent and a non-parent. In custody disputes involving third parties the natural parent has a presumptively superior right to custody. *In re Custody of McGuire* (1985), Ind.App., 487 N.E.2d 457, 460–461.

In the case at bar the trial court judge stated in his order that both parents had "unique features of value" and he continued the joint custody order. When a court awards joint legal custody our legislature has determined that one of the important factors to consider is "[w]hether the persons awarded joint custody are willing and *able to communicate* and cooperate in advancing the child's welfare ...". IC 31–1–11.5–21(g)(2) (Burns Code Ed., 1987 Replc.) (our emphasis). Unlike the trial court in *Cain*, the trial court in the instant case determined that there was enough communication to continue the joint custody portion of the original order. Our review of the record does not reveal substantial and continuing problems with communication analogous to those in *Cain*.

Harold also complains that Mary did not inform him of her intent to comply with the court order to return to Indianapolis. Mary and Harold were both present at the hearing on her move to Colorado. At that hearing Mary testified under oath that she would move back to Indiana if necessary. R. 249. This hearing was on August 31, 1988. The court order, issued September 9, 1988, gave Mary 30 days to move back to Indiana.

Harold did not hear from Mary or Peter from October 4, 1988, until October 24, 1988. The evidence shows that during this time period Mary moved from Colorado to Indiana. She stayed with her stepfather in West Lafayette until she found an apartment in Indianapolis and moved there in mid-October. A few days later Mary called Harold and gave him her address and telephone number. Mary informed her lawyer that she was in Indiana on October 11. (October 9 was a Sunday and Oct 10 was a holiday.)

While Mary was attempting to re-establish a residence in Indianapolis Harold began making and recording phone calls to Colorado. Although he was told that Mary had resigned from her job and requested that her paycheck was to be forwarded to her stepfather in West Lafayette; that Peter was no longer attending school in Colorado; that Mary had moved from her apartment; and, that the post office had a forwarding address to West Lafayette; Harold never called Mary's stepfather, William James McCleary, in West Lafayette.

After Mary and Peter were settled in Indianapolis Harold resumed regular visitation with Peter.

There was also evidence that Mary did not discuss Peter's performance in school with Harold. Harold testified that Mary told him that he should communicate directly with Peter's pre-school teacher and that he did so. R. 356, 358.

The trial court finding of a "communications breakdown" is clearly against the logic and effect of the facts and the reasonable, probable deductions to be drawn therefrom.

## 2

### Change of locations

The trial court order changing custody stated that "the mother has moved to considerable locations *since the last order*."

R. 120 (our emphasis). Mary moved in response to the prior court order. She cannot be penalized on that basis.

Mary was living in Colorado at the time of the prior order and moved to comply with that order. She returned to Indiana and stayed with her stepfather in West Lafayette for approximately one week while she waited for her furniture to arrive from Colorado, located a place to live, found a new job, and reenrolled Peter into the pre-school he had attended the previous year. Her compliance with a court order cannot be construed as a substantial and continuing change of circumstances which make the existing order unreasonable.

### 3
### *Remarriage of non-custodial parent*

The trial court cited Harold's plan to remarry as a reason for modification of custody. The evidence shows that this would be Harold's fourth marriage. Furthermore, a change in the noncustodial parent's lifestyle does not warrant a modification of custody. *Walker*, at 501; *Isom v. Isom* (1989), Ind.App., 538 N.E.2d 261, 264.

### 4
### *Educational problems*

The trial court stated that Peter "had recent educational problems causing his removal from school in mid-year ...". R. 120. It is clear from the evidence that Peter's "educational problems" coincided with the hearing for modification of custody and were not of a substantial and continuing nature.

Most of the evidence regarding Peter's educational problems was submitted to the trial court through the deposition of Peter's pre-school teacher. The following are excerpts from her testimony:

Q. Could you just give us a rundown of Peter's progress here at the school?—this year first and then, if you could, last year as well.

A. I could just start with last year, if that's all right.

Q. That's fine.

A. Last year he was just a little rough around the edges—not a discipline problem at all, really—just a little rough, just rough, but nothing bad.

This year he was fantastic. He matured quite a bit. He was doing real well up until the time that his father and his mother were going through a custody battle, and then his behavior changed. R. 94.

Q. Do you have any records of his attendance?

A. No, but from what I do remember, he was very punctual, and he did come almost every day.

Q. And what has the situation been this year as far as his attendance and his being on time?

A. Very punctual and on time.

Q. I understand he has missed some days this year?

A. Yes, and that was just going back to the time—

Q. Tell us what days he missed.

A. It was during that time—what was it?—February, like two weeks, I believe, back in February, when they were going through that time ...

. . . .

Q. How much time did he miss?

A. About a week or so.

Q. And were you given a reason why he was not here?

A. No.

Q. Do you recall what specific days it was? Was it a whole week? Or starting on a particular day?

A. I just know the time span: it was about a week. I know Mary was totally upset. She was scared to death that her son would be taken away. . . .

R. 96, 97.

Q. You had a good year with him [Peter] last year?

A. Yes.

Q. And all of this school year but for a short period in February of this year, he has been good for you?

A. Yes.

R. 112.

Furthermore, it is important to note that Peter was in pre-school, therefore his at-

tendance was not required by State law. R. 110.

Although it is clear that Peter had some problems around the time of the custody hearing it is against the logic and effect of the facts to conclude that these problems were continuing. There has been no showing that the existing custody order was unreasonable.

The judgment of the trial court is not supported by substantial probative evidence supportive of its conclusion and judgment. We reverse with instructions to reinstate the prior custody order.

RATLIFF, C.J., and HOFFMAN, P.J., concur.