In re the Marriage of Wilbur Roy
BINGAMAN, Appellant–
Petitioner,

v.

Pamela Jo BINGAMAN, Appellee–
Respondent.

No. 09A04–9003–CV–124.

Court of Appeals of Indiana,
Fourth District.

Nov. 6, 1991.

Kelly Leeman, Logansport, for appellant-petitioner.

Jim Brugh, Logansport, for appellee-respondent.

## CASE SUMMARY

CHEZEM, Judge.

Appellant/Petitioner, Wilbur Roy Bingaman, appeals the trial court's order removing custody of his two minor children from him and awarding custody of the children to the Cass County Department of Public Welfare. We affirm but remand with instructions.

## ISSUES

The issues presented by the husband can be stated as follows:

I. Whether there was sufficient evidence to support the trial court's finding that the requisite change of circumstances was sufficiently substantial and lasting as to make the existing custody order unreasonable.

II. Whether the trial court could award custody of the two children to the welfare department, a third party and not a party to the dissolution.

III. Whether visitation should have been awarded to Wilbur.

## FACTS

Wilbur Bingaman and Pamela Bingaman were divorced on February 21, 1980. At that time, the custody of their two children, E.B. and C.B. was awarded to Pamela. In May, 1987, Wilbur petitioned the court for a modification of the custody order. After a hearing, the court awarded custody to Wilbur finding that Pamela's conduct in caring for the children, along with the condition of her home, were a change of circumstances so substantial and continuing as to make the prior custody order unreasonable. In May, 1989, Pamela then petitioned the court for a modification of the 1987 custody order. Both Pamela Bingaman and Wilbur Bingaman testified at the hearing. The judge interviewed the children in his chambers; however, no record was made of that interview. The court then issued the following order:

1. There is absolutely no doubt in this Court's mind that the minor children's continued residence/custody with their father is clearly not in their best interests.

2. The Court is well aware that the necessary showing of substantial and continuing changes in circumstances does not relate to the economic or daily changes in the life of the non-custodial parent. Living conditions at the [wife's] residence were apparently deplorable as of the Court's October 29, 1987, order. Little evidence was cross-examined at the recent hearing regarding her current living conditions because [husband] relied, instead, on the requirement of showing

substantial and continuing changes in circumstances.

3. Either parent's right to custody of their minor children is not absolute. The Court can award custody of the minor children to a third party, and this Court strongly believes that this particular situation is more a CHINS situation than a custody modification situation. The allegations of drug and alcohol use/encouragement, living conditions, emotional deprivation, and neglect are sufficient for this Court to award custody of [E.B.], born June 23, 1973, and [C.B.], born March 25, 19[77] to the Cass County Department of Public Welfare, for placement, oversight and supervision in the home of [wife], Pamela Jo Bingaman.

## DISCUSSION AND DECISION

■ The first issue is whether there was sufficient evidence to support the trial court's finding that the requisite change of circumstances was sufficiently substantial and lasting as to make the existing custody order unreasonable. The modification of a custody order is within the sound discretion of the trial court and we review only for an abuse of that discretion. *Brown v. Brown* (1984), Ind.App., 463 N.E.2d 310.

■ Wilbur argues that while there may have been sufficient evidence to support a finding of substantial and continuing change of Pamela's circumstances, the evidence as to his circumstances was not sufficient to justify a finding that the custody order of 1987 was unreasonable. While noting that a change in the economic or environmental circumstances of a non-custodial parent will not in and of itself constitute substantial and continuing change of circumstances as to justify a change of custody, *Isom v. Isom* (1989), Ind.App., 538 N.E.2d 261, *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, consideration of these

changes in the non-custodial household is not precluded in determining whether a substantial and continuing change of circumstances does in fact exist. As such, Wilbur's argument amounts to an invitation to reweigh the evidence. This we will not do. *Thompson v. Thompson* (1990), Ind.App., 550 N.E.2d 1332.

■ The history of this matter shows that in the dissolution order of February 21, 1980, the custody of E.B. and C.B. was given to Pamela. On October 29, 1987, the trial court changed custody of the two children to Wilbur; this change was based on representations made by Wilbur as to improvements he would make to his home and the deplorable condition of Pamela's home. Wilbur did not make those improvements, and Pamela improved her home. There were also allegations that the relationship between the children and Wilbur had deteriorated. These circumstances are of such a substantial and continuing nature that the trial court could find the existing custody order of October 29, 1987, was unreasonable.

■ The second issue to be addressed is whether the trial court could award custody of the two children to the welfare department, a third party and not a party to the dissolution. There is precedent allowing the trial court to award custody in a dissolution proceeding to a third party: *Moody v. Moody* (1986), Ind.App., 488 N.E.2d 378 (child awarded to grandparents); *Fox v. Fox* (1984), Ind.App., 466 N.E.2d 789 (child awarded to welfare department). Further, we find no persuasive authority[1] or logic that limits the trial court to these options at initial custody determinations only. Indeed, I.C. 31-1-11.5-21 provides "the trial court shall determine custody and enter a custody order." The only limitation of the application of I.C. 31-1-11.5-21 or 22 is contained in

**1.** This court in *Brown v. Brown* (1984), Ind. App., 463 N.E.2d 310 stated that I.C. 31-1-11.5-21 does not apply to modification of custody proceedings. However, that interpretation does not follow *Truden v. Jacquay* (1985), Ind.App., 480 N.E.2d 974 which allowed the use of the interview procedure in a visitation modification. While it is clear that a different standard in determining modification of existing custody and visitation orders must be used in subsequent proceedings, the prohibition against the use of the reports, investigations, interviews, and other means authorized by I.C. 31-1-11.5-21 in a subsequent custody hearing seems to frustrate the ends of justice.

I.C. 31-1-11.5-22(d) which prescribes the standard to be used to determine whether a custody order should be modified. While the obvious preference of the law is to award custody of the children to their parents, if a child cannot be safely placed with a parent, the trial court cannot ignore the risk to the child's well-being.

If the trial court believes that neither parent can adequately parent these children, the trial court may order an investigation under the authority of I.C. 31-1-11.5-22. The trial court may also appoint a guardian ad litem as provided for by I.C. 31-1-11.5-28. The information can be referred to the Welfare Department in the form of an intake. However, the welfare department is not required to file a petition to have these children adjudicated as children in need of services. I.C. 31-6-4-10(a) provides "[t]he prosecutor or the attorney for the county department may request the juvenile court to authorize the filing of a petition alleging that a child is a child in need of services." Until such time either the prosecutor or county department chooses to file a petition to determine that E.B. and C.B. are children in need of services, the dissolution court must award custody of the children to someone. The trial judge determined that placing the children in the physical custody of Pamela under welfare supervision was in the best interests of the children. We do not believe that this was an abuse of discretion.

█ Notwithstanding, the third issue we should address is the failure of the trial court to award visitation to Wilbur. We believe that omission to be an oversight as there was no finding to deny visitation. Therefore, we remand to the trial court to enter a visitation order or to make such findings pursuant to I.C. 31-1-11.5-24 which would allow the denial of visitation.

SULLIVAN, J., concurs.

MILLER, J., dissents with separate opinion.

MILLER, Judge, dissenting.

I disagree with the majority. First, there was no evidence (just hearsay allega-

tions) upon which the court could modify custody. Second, after finding this case was a CHINS matter, the trial court circumvented the legislative and policy mandate of our CHINS statute. Finally, the trial court, in effect, revoked custody rights of both parents without allowing the parents due process.

The majority characterizes Wilbur's appeal as a request to this court to reweigh the evidence presented at the modification hearing. However, I view this case as one in which there is a total lack of evidence of substantial value to sustain the decision of the trial court. The evidence that was presented at the hearing amounted to nothing more than unsubstantiated allegations from Pamela—based largely on hearsay—followed by denials from Wilbur. In other words, the hearing was little more than a shouting match between Pamela and Wilbur.

The majority concludes that mere allegations are sufficient to show a change of circumstances so substantial and continuing as to make the existing custody order unreasonable. This is contrary to Indiana precedent—mere allegations are *not* sufficient to substantiate custody modifications. *Drake v. Washburn* (1991), Ind.App., 567 N.E.2d 1188; *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490. To hold that allegations are sufficient to support a custody modification also runs counter to the policies inherent in our family law statutes. First of all, the requirement of Ind.Code 31-1-11.5-22 that custody may only be modified upon a showing that the existing custody order is unreasonable creates a presumption in favor of the custodial parent. *Lucht v. Lucht* (1990), Ind.App., 555 N.E.2d 833. The presumption in favor of the custodial parent promotes "our jurisdiction's policy that a permanent home is considered best for the welfare of the child." *Walker, supra.* Thus, in order for a change in custody to be warranted, there must be a change in condition from the date of the last order and that change must be of such a *decisive character* so as to make the change necessary for the welfare

of the child. *Lucht, supra; Poret v. Martin* (1982), Ind., 434 N.E.2d 885.

Here, Pamela came to the hearing armed with bare *allegations* (all of which Wilbur denied) that Wilbur was not treating the children properly. Most of Pamela's testimony regarding Wilbur's treatment of the children was prefaced by statements such as "from what I hear" or "from what they tell me". She alleged that Wilbur did not take the kids to the doctor when they needed to go, that he allowed the children to drink alcohol, and that there seemed to be some violence in the way he disciplined the two children. These allegations are unsubstantiated [1] and are therefore not sufficient to substantiate modification of custody. *Walker, supra.*

The majority points to several changes in Pamela's lifestyle. The record does reflect that Pamela has made several changes for the better in her lifestyle, for which she should be commended. However, changes in the noncustodial parent's lifestyle—while not to be overlooked—cannot form the sole basis for modification of custody. *Drake v. Washburn* (1991), Ind.App., 567 N.E.2d 1188; *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110.

I am sensitive to the problems faced by trial court judges when asked to change custody from one parent to another. Further, Pamela's allegations—if true—are serious and warrant further investigation if the judge is concerned about the children's welfare. However, I cannot agree that Pamela's allegations show a change in circumstances of a decisive nature which are sufficient to warrant a change in custody.

Likewise, I disagree with the majority that the evidence was sufficient to place custody of the Bingaman children with the welfare department. Assuming *Moody* and *Fox*—which both involve original custody determinations—permit the trial court to *sua sponte* award custody to a third party in a *custody modification* proceeding, there is still a strong presumption in favor of the custodial parent which must be overcome. I.C. 31–1–11.5–22. Pamela's allegations are not sufficient to overcome this presumption.

Child custody proceedings implicate the fundamental relationship between parent and child, and procedural due process must be provided to protect the substantive rights of the parties. *Fox, supra; Hayden v. Hite* (1982), Ind., 437 N.E.2d 133. However, the trial court here determined that the Bingaman children were children in need of services, and in effect, removed custody of the children from both parents without providing the parents with procedural due process rights outlined in our statute.

I, too, am concerned with the welfare of the children. Nonetheless, I am also concerned with the fundamental rights of both parents, and with the public policy of this state, to keep families intact. *See* I.C. 31–6–1–1. Therefore, I cannot agree that a judge at a modification hearing has the authority to *sua sponte* determine the children to be CHINS. Rather, the procedures set out in our CHINS statute must be followed. These procedures balance public policy with the need to protect the children and with the parent's fundamental rights to raise their children. For example, a welfare department caseworker may take a child alleged to be CHINS into custody with or without a court order, depending on the circumstances. A court order is not

1. I do note that the judge interviewed both children *en camera*. However, no record was made of this interview and we cannot speculate what the children may have said during that interview. Nor may a judgment to modify custody be based solely on extra-judicial inquiry of the children by the trial judge. *Blue v. Brooks* (1973), 261 Ind. 338, 303 N.E.2d 269; *Truden v. Jacquay* (1985), Ind.App., 480 N.E.2d 974. I realize that the use of the in-chambers interview with minor children "allows the judge to fulfill his duties without placing the children in an adversarial position between battling parents."

*Truden, supra,* at 978. This reasoning ignores the fact that children are already in an adversarial position between their battling parents. Further, if the trial court judge interviews the child in chambers (without making a record of the interview) before making his or her decision on custody, it seems likely the losing parent would conclude that whatever was said in chambers was unfavorable. In addition, when no record is made of the interview, we have nothing to review on appeal. Therefore, it is my opinion the preferred method would be to have the child testify in court.

necessary if there is probable cause to believe that the child is a child in need of services, the child's physical or mental condition will be seriously endangered if the child is not taken into custody immediately, and consideration for the safety of the child precludes the immediate use of family services to prevent the removal of the child. I.C. 31-6-4-4. After the child has been taken into custody, there must be a hearing to determine whether there is indeed probable cause to believe the child is a CHINS and further detention is necessary. I.C. 31-6-4-5. Once an intake worker has information indicating the child may be a CHINS, the worker may begin a preliminary investigation and determine whether proceedings to have the child adjudicated a CHINS are warranted. I.C. 31-6-4-7. Further, both children and parents must be afforded an opportunity to cross-examine witnesses, to obtain evidence, and to introduce evidence on their behalf. I.C. 31-6-3-2. None of these procedures were followed in this case.

Further, the trial court's order in this case removed custody of the children from both parents, in effect terminating their rights to raise their children. Again, our legislature has provided procedures to be followed which balance the parent's fundamental right to raise their children with the welfare and protection of the child. *See* 31-6-5-1 *et seq*. None of these procedures were followed in this case.

It should also be observed that, if custody is placed in a third party under I.C. 31-1-11.5-21, the parents could be deprived of custody and visitation rights to their children. Initially, this has the effect of terminating the parent/child relationship without following the procedures under the termination statutes. Further, these rights are terminated without requiring the parent's unfitness to be proven by clear and convincing evidence. True, the termination may not be permanent because the statute provides for modification; however, there is no requirement that the parents' continued unfitness be proven by clear and convincing evidence before the modification

can be denied. A parent's relationship with his children could be permanently cut off without the parent's unfitness ever having been established by clear and convincing evidence. The statutes as applied would seem to run counter to the constitutional rights of parents to raise their children, and the corresponding mandate that the right may only be terminated upon a showing of clear and convincing evidence that the requirements for termination have been met.

For all of the foregoing reasons, I would reverse the decision of the trial court.