**Bonita L. (Roy) PRIBUSH, Appellant (Respondent Below),**

v.

**James W. ROY, Appellee (Petitioner Below).**

No. 4–783A245.

Court of Appeals of Indiana, Fourth District.

Nov. 30, 1983.

Rehearing Denied Jan. 12, 1984.

---

1. Prior to the tender to the clerk of $17,500 made after the lawsuit was commenced Phillips' last payment was April 9, 1981.

Peter G. Tamulonis, Robert J. Wampler, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellant.

James A. Buck, Buck, Berry, Landau, Breunig & Quinn, Indianapolis, for appellee.

MILLER, Judge.

Bonita Roy Pribush (Mother) seeks here the reversal of the trial court order that changed custody of her son, Jamie, from herself to James W. Roy (Father). After reviewing the record, we are compelled to agree with Mother that Father has failed in his burden of making "a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." IND.CODE 31–1–11.-5–22(d). We reverse.

## FACTS

Mother and Father obtained a Kansas divorce on January 14, 1981, wherein Mother was awarded permanent custody of Jamie, the only offspring of the marriage and born on July 12, 1974. In March, 1981, Mother remarried and moved to Indianapolis where she and Jamie currently reside in a four-bedroom home with Mother's new husband, his son, and just recently, a months-old-baby brother. Mother is an assistant professor at Franklin College, and step father is an associate professor at Butler University, a situation occasionally requiring Jamie to be alone at home for a short while with only his fourteen-year-old stepbrother. Nine-year-old Jamie was a B student in third grade and involved in various sports (soccer, baseball, basketball) as well as Cub Scouts, science fair projects, and at that time, a summer computer class. The whole family attends church, travels together, and participates in folks marching (hiking clubs). Mother's neighbors' testimony confirmed Mother's evidence that Jamie lived in a normal, stable and positive family atmosphere.

Jamie's visitation with Father has been regular and rewarding although such has not always been the case. At the time of the divorce, Father, a regular Army officer, was on alert to go to Korea. Since that time, he has remarried and been stationed in Wayne, Pennsylvania, where he is an assistant professor in military science at Valley Forge Military Junior College. Upon questioning, Father volunteered the following:

> "[Father]: I am assured that I will be there for two years.
>
> Q. Uh, short of actual war or some such thing as that.
>
> A. Even in actual war, military junior colleges will continue in the United States."

Record, p. 23. Father and new wife have custody of her son from a prior marriage, who is almost Jamie's age, and when Jamie visits, they all engage in a variety of activities as a family such as fishing, playing games, building a treehouse, and going to the local wildlife preserve.

In addition to evidence of the change in his residence and in his marital status, Father presented certain other testimony, which in his mind indicated that Jamie's custody must be changed. Father described problems he perceived with Jamie's fantasizing and withdrawing from problems. This self-serving testimony revealed Jamie was afraid of the dark, felt insecure with his current family setting, and believed he was not trusted in the custodial household. As representative of the situation, Father related an incident whereby Mother held Jamie monetarily responsible for an air mattress he had borrowed for a slumber party when the family dog deflated it during the course of the night. (Father bought

the new air mattress for him.) In addition, Father stated Jamie had emotional outbreaks, had school problems in second grade, and had expressed a desire to live with Father. Father's new wife corroborated Father's testimony that Jamie enjoyed his custodial visits with Father and that she enjoyed a good relationship with Jamie. This is the essence of Father's presentation—no qualified child psychologist appeared for either party to establish the existence of any emotional problems experienced by Jamie.

After a hearing at which all the above evidence, as well as testimony favorable to Mother, was heard and after considering a "recommendation" from the Marion County Domestic Relations Counseling Bureau, the trial court modified the Kansas custody decree by granting permanent custody to Father upon a finding "that a substantial and continuing change of circumstances exists which requires modification of the decree as to the provisions pertaining to custody and support." Mother appeals the order.

### DECISION

■ Modifying child custody orders is governed by IC 31–1–11.5–22(d) where it states:

> "The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable."

As our supreme court has interpreted this statute, the trial court must determine that the changed circumstances warranting modification must be of a *decisive* nature, thereby fitting within the legislative description of "substantial and continuing." Then, these changed circumstances will support a modification order only if such order is necessary for the welfare of the child, thereby conclusively establishing the "existing custody order [is] unreasonable." *Poret v. Martin,* (1982) Ind., 434 N.E.2d 885; *Barnett v. Barnett,* (1983) Ind.App., 447 N.E.2d 1172.

■ Our function in reviewing the trial court's decision is to determine whether the court abused its discretion. Thus, we neither weigh the evidence presented nor can we adjudge the credibility of the witnesses. Only if the trial court's order is against the logic and effect of the facts and circumstances brought to the court's attention or the inferences drawn therefrom and if there is no substantial probative evidence to support the modification order, do we reverse for abuse of discretion. *Barnett v. Barnett, supra; Moutaw v. Moutaw,* (1981) Ind.App., 420 N.E.2d 1294. In so doing we can consider only that evidence favorable to the court's decision. *Smith v. Dawson,* (1982) Ind., 431 N.E.2d 850. In addition, the petitioner has the burden of establishing the original or existing custody order should be modified due to the substantial continuing change in those original conditions. In ruling on such petition, the trial court must consider the petitioner's evidence *with the best interest of the child upper-most in the court's mind as the paramount concern of the decision. Barnett v. Barnett, supra; Whitman v. Whitman,* (1980) Ind.App., 405 N.E.2d 608. We are mindful of these principles as we conclude the trial court erred in the case here.

The evidence most favorable to its decision conclusively establishes the decisive change, if any, is in the Father's lifestyle. He is now able to offer a semi-permanent home and a family atmosphere for Jamie's upbringing, but we do not believe the trial court put such "change" in its proper perspective. We do not deny that the trial judge must attend to all the circumstances surrounding the child in making its determination that alterations in conditions justify a change of custody. However, the trial judge here misapprehended the actual role the child's welfare plays in making such determination and that the change in the father's lifestyle does not have any real significance in the decision except as it might relate to the child.

Typically, "the cases dealing with modification of child custody decrees have been based on changes of circumstances *respecting the custodian. . . ." Bowles v. Bowles,*

(1970) 254 Ind. 536, 261 N.E.2d 228, 230 (emphasis added). Our courts have "held that it is not error to refuse to modify custody where the evidence is primarily regarding substantial changes in the *noncustodial* spouse's personal circumstances." *Smith v. Dawson*, 431· N.E.2d at 852 (emphasis added); *Huston v. Huston*, (1971) 256 Ind. 110, 267 N.E.2d 170. This policy is borne out by the general principle that the child must be affected by the change in conditions of custody in order to justify the modification of the terms thereof:

"Although a change in a custody order must be necessitated by a substantial change in conditions since the order was made, it does not follow that there must be such a change that compels the change in and of itself. The change, if *its effect upon the child* is to be properly assessed, must be judged in the context of the whole environment. *It is, after all, the effect upon the child that renders the change substantial or inconsequential;* and a change that might be regarded as slight or inconsequential in one case might be catastrophic in another."

*Poret v. Martin*, 434 N.E.2d at 888 (emphasis added). This is in keeping with the longheld view that the best interests of the child involved are pivotal to any modification. "It is the children's welfare—not the parents'—that must control the actions of the court." *Wible v. Wible*, (1964) 245 Ind. 235, 196 N.E.2d 571.

■ In the instant case, Father has not carried his burden of proving that any change in his own circumstances had any effect upon Jamie. Nor has he shown any decisive change of conditions in the custodial home. In fact, Father testified Mother is a "very fine mother." He has also failed to show any change in the treatment of Jamie in the custodial home (*see, e.g., Bowles v. Bowles, supra*) necessitating his removal therefrom. Father testified Jamie "seems to be well adjusted" and that he was "happy with his progress." Record, p. 27. Of an equally unhelpful nature is the "recommendation" of the Marion County Domestic Relations Counseling Bureau where the counselor merely reported her observations of Jamie as "a bright, verbal, almost 9-year-old" and of his desire to live with Father. The lack of any professional recommendation and of probative evidence as to the custody question in the report certainly prevents any reliance by the trial court thereon. Lastly, the fact that Jamie expressed his desire to live with Father is an insufficient change of conditions to warrant modification of custody. *See Abair v. Everly*, (1959) 130 Ind.App. 192, 163 N.E.2d 34. Father has failed to show that Jamie was affected by any decisive change in the circumstances of the original custody order. He, thus, has failed to show how Jamie's welfare is dependent upon a modification thereof.

It is difficult to not be sensitive to the delicate balancing the trial court must perform in making decisions such as these, but in this case, the court abused its discretion. Indeed, Jamie is fortunate to have two loving households desiring him. However, not only was there insufficient change to necessitate modification but the balance tends toward the custodial home where Jamie is now living with a sibling of his blood. The opportunity for cultivating a relationship with that child is probably of more long-range importance than providing him with a contemporary stepbrother. To rule otherwise, the trial court would have "succeeded in slicing the family into even smaller fragments than before, separating the son not only from his mother, but from his [sibling] as well." *Moutaw v. Moutaw*, 420 N.E.2d at 1300.

We regret this decision may dash some of Jamie's hopes. This cannot be helped, particularly in situations where such hopes are unnecessarily inflated by outside influences. The divorce decree put Jamie in Mother's *permanent* custody; any of his expectations that a change merely in Father's lifestyle— without regard to the prime consideration of his own welfare and best interests—

would guarantee a change in custody were falsely raised and wrongfully encouraged.

Reversed.*

CONOVER, P.J., and YOUNG, J., concur.

---

* Our disposition of this issue naturally moots the issue regarding the support award against

Mother. We would also like to thank counsel for their concise and well-written briefs.