**In re the Marriage of Dawn Ellen PEA (Krzynowek), Appellant (Respondent),**

v.

**Andrew Bruce PEA, Appellee (Petitioner).**

**No. 49A02–8602–CV–47.**

Court of Appeals of Indiana, Second District.

Oct. 9, 1986.

Audrey K. Grossman, Treacy Grossman & Sullivan, Indianapolis, for appellant.

Judith N. Stimson, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Respondent-appellant Dawn Krzynowek (Dawn) appeals the trial court's order granting the petition of appellee-petitioner Andrew Bruce Pea (Bruce) for modification of custody of the parties' minor son, Andrew Ryan Pea (Ryan), claiming the trial court's decision to modify its prior custody order constitutes an abuse of discretion in that the change of custody is not supported by the evidence.

We reverse.

## FACTS

The facts most favorable to the trial court's judgment reveal that the marriage of Dawn and Bruce was dissolved on October 19, 1981. Dawn was awarded custody of Ryan while Bruce was given liberal visi-

tation rights, including prolonged summer visits.[1] Immediately after the divorce, Bruce resided in Indianapolis. Dawn and Ryan lived with Dawn's mother in Vincennes. Three months later, Dawn and Ryan (then age four) moved eight miles from Vincennes, to an apartment in Lawrenceville, Illinois. About that time, Dawn began dating Steve Krzynowek (Steve).

In 1984, a series of events occurred. Bruce moved to Champaign, Illinois, in January, 1984. In February, 1984, Dawn and Ryan moved back to Vincennes, requiring Ryan to change schools. Dawn notified Bruce in July, 1984, that she intended to move to Dillsboro, Indiana, located in the eastern part of the state. Shortly thereafter, Bruce petitioned for modification of custody and for a restraining order. In August, 1984, Dawn moved to Dillsboro and lived with Steve. On August 30, 1984, the trial court awarded Bruce temporary custody of Ryan during the pendency of the action. Bruce remarried on August 31, 1984, and Dawn and Steve married on October 5, 1984. Due to numerous continuances, the trial court did not hear evidence in the cause until March 27, 1985 and July 8, 1985. Thus, Ryan had resided with Bruce under the temporary custody order for approximately one year at the time of the trial court's judgment on November 4, 1985.

Ryan is a well-behaved eight year old boy functioning at an average level in school. The court-appointed psychologist indicated that Ryan is an emotionally well-adjusted child. He loves both parents and interacts positively with each. Both Dawn and Bruce were described as good parents. The psychologist's report also noted that Ryan has tolerated school changes adequately.

Bruce presented evidence intended to show that he would be the better custodian for Ryan. For instance, it was shown that the stability of Bruce's home environment had improved since the original custody order. Bruce also had moved to a community that offered a variety of extracurricular activities for Ryan. Also, Bruce's mother testified to specific incidences of Dawn's neglect of Ryan. Specifically, the paternal grandmother noted that once she observed Ryan, although ill, playing outside after the mother had gone grocery shopping. The paternal grandmother also noted that Dawn, on occasion, jogged for an hour with a friend while Ryan was attended by an eleven-year-old boy, the son of Dawn's jogging partner.

## ISSUE

Dawn's appeal raises one issue:

Did the trial court abuse its discretion by modifying custody of Ryan?

## DECISION

PARTIES' CONTENTIONS—Dawn contends that the trial court's decision to modify custody of Ryan constituted an abuse of discretion because Bruce was required to prove that there had been a substantial and continuing change of circumstances since the prior decree, and that this burden was not met.

Bruce contends that he carried his burden by proving that Dawn lived with a man who was not her husband, that Dawn changed her place of residence several times with her last move to his inconvenience, and that he had improved his situation and could provide a suitable home for the child.

CONCLUSION—The trial court abused its discretion by modifying its prior custody decree and awarding custody of Ryan to Bruce because the change of custody was not supported by the evidence and is contrary to law.

---

**1.** The dissolution decree labels this custody arrangement as joint custody. The statutory provision for joint legal custody, Ind.Code 31–1–11.-5–21(f) (1983), was not in effect at the time of the parties' decree. A decree providing for joint custody prior to the enactment of the statutory provision has been held contrary to law and construed as a sole custody arrangement in favor of the primary custodian. *See Helms v. Helms* (1986), Ind.App., 490 N.E.2d 1153; *Lord v. Lord* (1982), Ind.App., 443 N.E.2d 847.

■ We recognize that a decision to modify a custody decree rests in the sound discretion of the trial court. *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172. In determining whether the trial court abused its discretion, we do not reweigh the evidence, judge the credibility of witnesses, or substitute our judgment for that of the trial court. *Id.* We must reverse, however, if the trial court's determination is clearly contrary to the logic and effect of the facts before the court. *See Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807. This standard of review requires this Court to examine the language and meaning of the appropriate statute to determine whether the party seeking modification presented evidence on each element of his burden of proof. *Moutaw v. Moutaw* (1981), Ind. App., 420 N.E.2d 1294, *trans. denied.*

■ A trial court may modify one of its prior custody orders "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." IC 31–1–11.-5–22(d). Only a strict showing that the present custody arrangement is unreasonable will suffice to justify a change in custody. *Moutaw, supra.* A modification of custody is warranted only when the petitioner shows a decisive change in conditions in the custodial home, or a change in the treatment of the children in the custodial home which necessitates removal. *Gerber v. Gerber* (1985), Ind.App., 476 N.E.2d 531; *Pribush v. Roy* (1983), Ind.App., 456 N.E.2d 747, *trans. denied.* Then, these changed circumstances will support a modification order only if such order is necessary for the welfare of the child, thereby conclusively establishing that the existing custody order is unreasonable. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885; *Pribush, supra.* This is the burden of proof imposed on the party seeking a change of custody.

■ Dawn's cohabitation with Steve, in itself, is not sufficient to justify the trial court's decision to modify the prior custody order. Rather, a custodial parent may be deprived of custody only upon a showing that the parent's cohabitation has an adverse effect upon the welfare of the child. *Custody of McGuire* (1985), Ind.App., 487 N.E.2d 457; *Marriage of Simmons* (1985), Ind.App., 487 N.E.2d 450, *trans. denied; Dunlap v. Dunlap* (1985), Ind.App., 475 N.E.2d 723. There was no showing here.

Bruce hypothesizes that Dawn's relationship with Steve was the source of a drawing by Ryan of a nude man and woman. *Record* at 224. Ryan drew the picture during a time that Dawn was custodial parent and was dating Steve. Although Steve may have occasionally stayed over at Dawn's home, they were not cohabitating at the time the picture was drawn. *Record* at 223. There was no evidence to show that Ryan had ever seen Steve and Dawn together while nude or that the drawing was, in any way, a response to their relationship. Indeed, the drawing could have been created as a result of other stimuli. Even if the inference urged by Bruce is reasonable, the drawing does not demonstrate that Ryan had been negatively affected by his mother's relationship with Steve. In fact, all the evidence was to the contrary. Several witnesses testified that Ryan was well-behaved. The psychological evaluation indicated that Ryan was an emotionally well-adjusted child. Furthermore, the evidence only demonstrated that Steve's presence was beneficial to Ryan. Steve worked with Ryan on his schoolwork, and provided stability and security for Dawn and Ryan.

■ Moreover, in order to modify a custody order, the trial court must determine not only that changed circumstances are substantial, *but that they are continuous. Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608; IC 31–1–11.5–22(d). Ryan created the drawing two and one-half years prior to the final hearing. Even if we were to assume that the drawing had some tendency to establish the adverse effect alleged by Bruce, there was no evidence to suggest that Ryan had any problem that continued through the date of the final hearing. As stated previously, the evidence established that Ryan was a well-behaved, well-adjust-

ed child. Our holding is consistent with *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850. In *Smith,* the court rejected the non-custodial parent's argument that a substantial and continuing change of circumstances existed when the evidence only established that the child had *previously* exhibited emotional and behavioral problems but had no *continuing* behavioral or emotional problems at the time of the custody modification proceedings. Furthermore, at the time of the final hearing, Dawn's unmarried cohabitation with Steve was no longer a continuing event, since she had been married to Steve for over six months. *See Simmons, supra.*

Similarly, we see no basis for the trial court to conclude that Dawn's past changes of residence constituted a continuing problem at the time of the hearing. All evidence is to the contrary. When Dawn and Steve married, they established a permanent residence in a home that was fully paid for. Steve's employer was located in the Dillsboro area and Dawn had begun employment in the area. Also, the evidence was that Dawn and Steve had a stable home.

Nor is Dawn's change of residence within Indiana a substantial change. Our courts have reaffirmed the principle that a move by the custodial parent is not *per se* a substantial change in circumstances as to make the parent's continued custody unreasonable. *Poret, supra; Lubeznik v. Liddy* (1985), Ind.App., 477 N.E.2d 947, *trans. denied.* The fact that the custodial parent's move makes visitation inconvenient is not a sufficient change necessitating a modification of custody. *Lubeznik, supra; Moutaw, supra.* In *Moutaw,* this Court rejected the father's contention that the mother's move from Valparaiso, Indiana, to Brownsburg, Indiana, a distance requiring two and one-half hours traveling time, was a substantial change of circumstances. Similarly, Dawn's move to the eastern part of the state, requiring an additional three hours traveling time, is not a substantial change.

In 1985, the Indiana General Assembly enacted IC 31–1–11.5–21.1 providing in pertinent part that when an individual who was awarded custody of a child intends to move to a residence one hundred miles or more from the individual's county of residence, "[t]he court shall take into account the distance involved in the proposed change of residence and the hardship and expense involved for noncustodial parents to exercise such rights, in determining whether to modify the custody" of a child. Although the statute was effective at the time of the trial court's decision in this cause,[2] neither party has raised its applicability. However, even if such issue were argued, we would not deem it necessary to alter our decision. Statutes are to be construed in harmony with existing law and as part of a general and uniform system of jurisprudence. *Board of Medical Registration & Examination v. Turner* (1960), 241 Ind. 73, 168 N.E.2d 193; *Ogle v. St. John's Hickey Memorial Hosp.* (1985), Ind. App., 473 N.E.2d 1055, *trans. denied.* There is a presumption that the legislature in enacting a particular piece of legislation has in mind existing statutes on the same subject. *Schrenker v. Clifford* (1979), 270 Ind. 525, 387 N.E.2d 59. Therefore, we must construe this newly created statute in harmony with IC 31–1–11.5–22(d), which requires a substantial change of circumstances. Thus, we interpret the statute to mean that a mere inconvenience resulting from custodial parents' changes of residence does not constitute "hardship and expense ... for noncustodial parents."

Moreover, the trial court could not properly consider Bruce's temporary custody of Ryan as a change in circumstances necessitating modification of custody. IC 31–1–11.5–7(f), as it relates to temporary custody, provides that "[t]he issuance of a provisional order shall be without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the pro-

---

**2.** The effective date of IC 31–1–11.5–21.1 (1985) was September 1, 1985. IC 1–1–3–3. The trial court's decision in this cause was in November, 1985.

ceeding." Thus, even though Ryan resided with Bruce for approximately one year under the temporary custody provision, Dawn's and Ryan's rights are not prejudiced.

Finally, a modification of custody is not warranted if the evidence establishes only a change in the noncustodial parent's lifestyle. *Gerber, supra; Pribush, supra.*

> "The evidence most favorable to its decision conclusively establishes the decisive change, if any, is in the Father's lifestyle.... [B]ut we do not believe the trial court put such 'change' in its proper perspective.... [T]he trial judge here misapprehended the actual role the child's welfare plays in making such determination and that the change in the father's lifestyle does not have any real significance in the decision except as it might relate to the child.
>
> ... [T]he child must be affected by the change in conditions of custody in order to justify the modification of the terms thereof...."

*Pribush, supra,* at 749–50. Bruce has not shown any decisive change of conditions in the custodial home. He has also failed to show any change in the treatment of Ryan in the custodial home necessitating his removal therefrom. On the contrary, there is uncontradicted evidence that Ryan is well-adjusted and well-behaved. Also, there is a psychological evaluation which reported that Ryan loves both parents, is comfortable in both settings, and has a very positive relationship with each parent and respective step-parent. Evidence that Ryan was left unattended on occasion by Dawn for short periods is not a decisive change in the treatment of Ryan. Our statute requires Bruce to show something more than isolated acts of misconduct; he must show that the changed circumstances regarding Dawn's stability and Ryan's well-being are substantial and continuing. *Smith, supra.*

All of which leads us to the conclusion that the evidence presented failed, as a matter of law, to demonstrate that a change in custody was necessitated by a substantial and continuing change in circumstances. The trial court's modification of custody was contrary to law and must be reversed.

Reversed.

SULLIVAN, and SHIELDS, JJ., concur.