Deborah S. SIMONS, Appellant
(Petitioner Below),

v.

Joseph W. SIMONS, Appellee
(Respondent Below).

No. 27A02–8911–CV–586.[1]

Court of Appeals of Indiana,
First District.

Feb. 11, 1991.

Gregory L. Laker, Davis Davis & Langan, Indianapolis, for appellant.

Anne C. Selby, Marion, for appellee.

ROBERTSON, Judge.

Deborah S. Simons appeals the modification of the child custody order in the decree that dissolved her marriage to Joseph W. Simons. The trial court modified the custody order by awarding Joseph custody of the parties' daughter, Angela. We reverse.

## FACTS

Deborah and Joseph were married on November 2, 1974. One child was born to this marriage, Angela Michelle Simons (born May 28, 1976). Deborah and Joseph were divorced on June 1, 1979. Deborah was awarded custody of Angela subject to Joseph's reasonable visitation and Joseph was ordered to pay child support.

Joseph filed the present petition to modify the custody order on July 10, 1989. In his petition, he alleged a material change of circumstances so substantial and continuing as to make the existing custody order unreasonable as follows:

a. [Joseph] has had, for nine and one-half years, a stable marriage and home.

b. [Deborah] has moved approximately four times, causing the minor child to have to relocate and to change school systems.

c. [Deborah] has, several times in the past few years, expressed to [Joseph] that she could not handle the responsibilities of parenting the child.

On July 17, 1989, Deborah filed a motion for contempt and for modification of the child support order. She alleged that Joseph had failed to maintain medical insurance on Angela's behalf as required by the decree. She also requested that the support obligation be increased to conform with the Indiana Child Support Guidelines.

A hearing on all matters was held October 4, 1989. At the time of the hearing, Angela was thirteen (13) years old. On October 6, 1989, the trial court rendered its judgment, the pertinent part of which reads as follows:

Having previously taken this cause under advisement, the Court now makes the following orders:

(1) Custody herein is now modified and granted to [Joseph]. The parties shall transfer custody of the child on October 21, 1989.

(2) Support shall be made payable herein from [Deborah] to [Joseph] through the Clerk of the Court in the sum of $42.00 per week. [Deborah] is granted credit against that support obligation in the following amounts: (a) for insurance reimbursement from the time [Joseph] was able to be employed in June of 1982 to the present at $30.00 per month the sum of $2,510.00; (b) for the remaining support arrearage the sum of $4,679.00. [Deborah] is therefore granted credit in support for 174 weeks, at

which time she shall begin paying the support obligation unless modified by the Court. [Joseph's] support hereby terminated.

The evidence in the light most favorable to the trial court's judgment indicates that Joseph remarried soon after the divorce, has had no other children, and has lived in the same house in Marion, Indiana since his remarriage. Angela has a good relationship with her stepmother and has had the same bedroom in her father's house since his remarriage. Joseph was unemployed from the time of the divorce until 1981. Since the middle of 1982, Joseph has been gainfully employed, working for and with James Bowers doing construction work. Joseph is now vice-president of J.G. Bowers, Inc. and earns gross income of approximately $480.00 per week. Joseph has almost continuously been behind in his child support payments.

The evidence also shows that soon before the divorce in 1979, Deborah and Angela moved in with Deborah's parents for approximately one and one-half (1½) years. Then Deborah and Angela moved in with some friends, Jeff and Jackie Endsley in Monrovia, Indiana for four months. Next, Deborah and Angela lived alone for one year in Mooresville, Indiana where Angela attended kindergarten. After that, Deborah and Angela moved to an apartment in Indianapolis [the Lawndale apartment] where they lived for six years. During this time, Angela attended grade school at the Westlake Elementary School. While Deborah and Angela were living in the Lawndale apartment, a romantic interest of Deborah's, a man named John, lived with them for approximately two years. After breaking up with John, another romantic interest of Deborah's, a man named Dino, moved into the Lawndale apartment. Deborah, Dino, and Angela lived at the Lawndale apartment for approximately two years and then moved into a house on Dennison Street in Indianapolis owned by Dino's aunt and uncle. At this time, Angela began attending junior high school at South Wayne Junior High School. At the time of trial, Deborah's relationship with Dino had ended and he had moved out. However, Deborah and Angela had continued to live in the house on Dennison Street.

To summarize Angela's educational and moving experience, the evidence indicated that Angela attended kindergarten in Mooresville. Afterwards, upon moving to the Lawndale apartment in Indianapolis, she attended grade school at the Westlake Elementary School. Then, upon moving to the house on Dennison Street, she attended South Wayne Junior High School. Westlake Elementary School and South Wayne Junior High School happen to be in the same school system. Therefore, since the time Angela started first grade, she has only moved once—from the Lawndale apartment to the house on Dennison. Moreover, there was no evidence to suggest that this move required Angela to change schools. The evidence would appear to indicate that the move coincided with Angela's promotion to junior high school. In sum, Deborah and Angela have moved one time in approximately the last eight years and no move has ever disrupted Angela's schooling.

Joseph presented evidence that Angela had exhibited some "peculiar" religious beliefs and behaviors. For example, she would talk about demons and would exorcise them from Joseph's car before getting in. However, Joseph admitted that Angela had not entertained these notions for many years and these beliefs and behaviors were only manifested during her mother's and her short stay with the Endsleys in the early 1980s.

The evidence also indicated that Angela had been quite upset when her mother broke up with the two above-mentioned romantic interests. Further, Angela's grandmother, Joseph's mother, testified that on one occasion many years ago she did not believe that Deborah's attention to an ear infection experienced by Angela was appropriate. The earache episode took place when Deborah and Angela lived in Mooresville—before Angela had started the first grade.

Evidence also indicated that Deborah had made disparaging remarks about Joseph in front of Angela regarding his support delinquencies. Also, Joseph testified that he and Deborah had argued about visitation in the past. However, Joseph admitted that the parties had been able to agree to an extended visitation schedule in the last two years which seemed to work better. Joseph testified that Angela had told him that she wanted to live with him. He also testi-

fied that Deborah had asked him to take custody of Angela in the past. However, the evidence is uncontradicted that the most recent of the two times that Deborah requested such a change was approximately two years before the present petition for modification was filed.

By all accounts, Angela is a well-adjusted teenager who is performing well at school and who does not have any particular problems (aside from being the subject of this lawsuit). She has been on the honor role and has won other academic commendations throughout her school experience.

The trial court interviewed Angela in camera. However, no record of the in camera examination was made. After the in camera interview, the trial judge made the following comments:

> I've now had a chance to talk to Angela. I guess the first thing I would say is that she's a very sweet girl. Seems to be. Pretty mature. Pretty ... seems well able to take care of herself and at least understand the dynamics between herself and everybody else and between the two of you. So you both have something to be proud of. It's one of the best parts of this job is when I get to talk to kids. Especially kids that are as nice as this one. So congratulations on that.

## DECISION

In an initial custody determination, the trial court presumes that both parents are equally entitled to custody. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490. The initial custody determination is based on the trial court's determination of which parent would be better. *Id.* However, a subsequent petition to modify custody is not a vehicle to relitigate the initial custody determination as to who might make the better parent. *Id.* In a subsequent petition to modify custody, the noncustodial parent bears the burden of overcoming the custodial parent's right to continued custody and must make a showing of a change in the custodial home which is of a decisive, substantial, and continuing nature. *Id.*

IND. CODE 31–1–11.5–22(d) governs custody modification. It reads:

> The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances.

Our review of a trial court's decision regarding a child custody modification is limited to determining whether the trial court abused its discretion in applying the applicable statutory guidelines. *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850. On appeal from a modification of a child custody order, we will not judge the credibility of the witnesses or substitute our judgment for that of the trial court. *Barnett v. Barnett* (1983) Ind.App., 447 N.E.2d 1172. In determining whether the trial court abused its discretion in modifying a child custody order, we consider only that evidence which supports the trial court's decision. *Smith, supra.* In reviewing the trial court's determination of custody rights, we will only reverse upon a showing of a manifest abuse of the trial court's discretion and such abuse will not be found unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749.

In an action to modify a custody order, the noncustodial parent seeking custody has the burden of establishing that the original or existing custody order should be modified due to a substantial and continuing change in circumstances. *Pribush v. Roy* (1983), Ind.App., 456 N.E.2d 747. In a modification hearing, the trial judge must consider the evidence with the best interests of the child or children uppermost in his or her mind as the paramount concern. *Id.* With regard to a decision to modify a child custody order, the trial court must determine that the

changed circumstances warranting modification must be of a decisive nature and such changed circumstances will support a modification order only if such order is necessary for the welfare of the child or children involved, thereby conclusively establishing that the existing custody order is unreasonable. *Id.* A modification of custody is warranted only when the petitioner shows a decisive change in conditions in the custodial home, or a change in the treatment of the children in the custodial home which necessitates removal. *Gerber v. Gerber* (1985), Ind.App., 476 N.E.2d 531. In any custody determination, the overlying concern of the courts is with the best interests of the children involved; however, whenever one party seeks a modification of an existing custody determination, only a strict showing that the present arrangement is unreasonable will suffice to justify a change in custody because of the potentially disruptive influence upon the child or children. *Moutaw v. Moutaw* (1981), Ind. App., 420 N.E.2d 1294.

■ The noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of child custody order; the noncustodial parent must show that changed circumstances regarding the custodial parent's stability and the child's well-being are substantial and continuing. *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, *trans. denied.* In *Pea,* we held that a divorced mother's cohabitation with a man was not sufficient in itself to justify an order transferring custody of the child from the divorced mother to the divorced father absent any showing that the cohabitation had an adverse effect upon the child. *Id.* A custodial parent cohabiting with another may be deprived of custody of the child only upon a showing that the parent's cohabitation has an adverse effect upon the welfare of the child. *Id.*

■ Our function on appeal is to examine the decision of the trial court and determine whether the record discloses evidence or reasonable inferences to be drawn therefrom which serve as a rational basis to support the finding of the trial court.

*Walker, supra.* We may reverse a custody modification under two sets of conditions. *Id.* The first such condition is satisfied by a combination of two deficiencies: 1) a failure to allege and prove a decisive change in conditions, and 2) no findings by the trial court that there existed such changes in conditions which warranted a modification. *Id.* Absent such deficiencies, the second basis for a reversal—the abuse of trial court discretion—comes into play. *Id.*

■ In the present case, the result is the same under either the deficiency or the abuse of discretion analysis. Under the deficiency analysis, the allegations in Joseph's petition (as set out above), either do not constitute a decisive change of conditions or are not supported by the evidence. The second deficiency under *Walker* has also been met: the trial court did not make findings regarding any change of circumstances.

■ As set out above, the first allegation in Joseph's petition is—in effect—that he had remarried and achieved some stability over the past several years. The evidence supporting this allegation is undisputed. However, modification of custody orders are typically based on changes of circumstances respecting the custodian. *Pribush, supra.* In *Pribush,* we held that the improvement of the noncustodian father's situation did not support a change of custody. *Id.* We held that—in spite of the father's greatly improved financial circumstances—the trial court abused its discretion in ordering a modification because the father had failed to demonstrate a decisive change of circumstances impacting the child's welfare. Therefore, we hold that the first allegation in Joseph's petition is insufficient to support the trial court's decision to modify the custody order.

We are not convinced that Joseph's second allegation—that Deborah's frequent moves (four moves in and around the Indianapolis area in the past 10 years) have disrupted Angela's schooling—could constitute a decisive change of circumstances sufficient to warrant a modification. However, assuming *arguendo* that the second allegation states a sufficient basis, our re-

view of the record—as outlined in the FACTS section above—fails to reveal the requisite evidentiary support. The evidence indicates that Deborah has moved one time since Angela started first grade—one time in approximately eight years—and that move did not disrupt Angela's schooling. Therefore, the trial court's decision to modify the custodial arrangement may not be supported on this basis.

■ Finally, the third allegation in Joseph's petition—that Deborah has expressed to Joseph that she could not handle the responsibilities of parenting—is plainly insufficient. We imagine that all parents must feel inadequate to the task of child raising from time to time. But, more importantly, appropriate focus of the trial court's and our inquiry—that of Angela's welfare—has apparently not been impacted by any of Deborah's feelings of inadequacy. By all accounts, Angela is a well-adjusted, thriving, successful, young adolescent. We have held that a temporary change of custody is insufficient to warrant a modification thereof. *Pea, supra.* We will not find that mere feelings of parental inadequacy—even when they are, as here, accompanied by offers to change custody—will support a petition to modify a custody order.

In considering the record as a whole, and considering Indiana's fixed policy favoring a stable, permanent home, we determine the trial court's decision is contrary to the logic and effect of the facts and circumstances. *Walker, supra.* Considering the evidence most favorable to the trial court's decision, we see nothing that constitutes a substantial and continuing change of circumstances. Nor do we believe that any evidence was presented to indicate that the existing order is unreasonable.

Further, at the time the present modification petition was filed, Deborah was no longer cohabitating with a man. Therefore, these circumstances were not continuing. Moreover, we are not impressed that any evidence was presented that suggested that Deborah's past cohabitations with men had an adverse effect upon Angela. That Angela was upset at the end of her mother's relationships strikes us as appropriate behavior and constitutes absolutely no evidence that her mother's cohabitations had an adverse effect upon Angela's welfare.

The evidence regarding Angela's "peculiar" religious beliefs hardly deserves comment. This behavior took place when Angela was very young, is ancient history, and has been absent for many years. This does not constitute a substantial or continuing circumstance.

■ Finally, perhaps Angela has expressed to her father and to the trial judge during the in camera examination that she desires to live with her father. However, a child's wishes—absent any evidence that the existing custody order is unreasonable—will not support a modification of custody. *Pribush, supra.*

■ Joseph focuses much attention in his brief to the trial court's in camera examination of Angela that took place outside of the record. He cites Justice Prentice's concurring opinion in *Blue v. Brooks* (1973), 261 Ind. 338, 303 N.E.2d 269 (J. Prentice concurring 303 N.E.2d at 274) that suggests that when a trial court's decision to modify a custody order could be based upon an extrajudicial in camera interview, that decision cannot be attacked as based upon insufficient evidence.

We examined the law of *Blue* in *Truden v. Jacquay* (1985), Ind.App., 480 N.E.2d 974. In *Truden,* we noted that the trial court's modification of an order impacting custody (visitation restriction) could not be based solely upon an extrajudicial in camera inquiry. Nevertheless, we affirmed the trial court's modification because its judgment was supported by sufficient evidence in the record independent of the in camera interview.

In the present case, we might speculate that the trial judge's decision was based upon his in camera discussion with Angela. However, as just mentioned, a modification may not be supported solely upon such an extrajudicial inquiry. *Id.* Joseph's allegations in support of his petition, the evidence supporting these allegations, and all the other evidence in the record considered as a

whole are plainly insufficient to support a modification of Angela's custody order. Therefore, we are unable to affirm the trial court solely upon the extrajudicial interview.

We believe that in the context of the present case, all the law as set out above regarding the modification of custody orders when filtered through the lens of Hoosier horse sense are appropriately summarized in the following admonition:

If it ain't broke, don't fix it!

The wisdom of the law as expressed in the above admonition is apparent in the present case. By all accounts, Angela was thriving in her mother's custody. Joseph's weightiest allegation—that Angela's custodial situation was destabilized by Deborah's frequent moves—is totally unsupported by the evidence. And yet, the trial court's order modifying Angela's custody effects a move and a change of schools which is necessarily disruptive in itself. *Moutaw, supra.*

We sincerely regret that our reversal of the trial court's modification will inject yet another significant disruption in Angela's young life. We also regret that our decision may not be in accordance with Angela's wishes. Nevertheless, we must conclude that the existing custody order was not "broke" and that the trial court committed error by attempting to "fix it." We conclude that the trial court has abused its discretion and the modification must be reversed. We remand to the trial court with instructions to enter orders consistent with this opinion, including appropriate orders regarding the support matters litigated below.

Judgment reversed.

CONOVER and BUCHANAN, JJ., concur.