**In re the Marriage of Hosea William DRAKE, Respondent–Appellant,**

**v.**

**Nancy Lee (Drake) WASHBURN, Petitioner–Appellee.**

**No. 27A02–9001–CV–46.[1]**

Court of Appeals of Indiana, First District.

March 18, 1991.

Jeffry G. Price, Peru, for respondent-appellant.

Anne C. Selby, Marion, for petitioner-appellee.

BAKER, Judge.

Hosea Drake (Hosea) appeals the trial court's grant of a child custody modification in favor of Nancy Drake Washburn (Nancy) in which the trial court changed the custody of the parties' two children from Hosea to Nancy. The sole issue presented for our review is whether there

---

1. This case was reassigned to this office on January 2, 1991.

were substantial and continuing changed circumstances making the existing custody order unreasonable. We find there were no such changes, and therefore reverse.

## FACTS

In 1985, during their marriage, Hosea and Nancy adopted two children, Chrystal and Josh. Both children had rather unstable lifestyles in other homes prior to their adoption by the Drakes. Nancy moved out of the home in 1986, and Hosea and Nancy were divorced in 1987. At the time of the divorce, Chrystal was 11 years old and Josh was 4 years old. Nancy did not contest custody of the children, Hosea was granted custody, and Nancy was granted visitation rights.

Subsequent to the dissolution of the marriage, Nancy remarried, completed her college degree, and secured employment at a social service agency. In June of 1989, Hosea and the children moved to Valparaiso, which was approximately a three hour drive from where Nancy was living. Hosea notified Nancy in February, 1989 of this upcoming move, and Nancy then filed a petition for custody modification. Her petition alleged as changed circumstances that she remarried, completed her undergraduate degree, became employed full-time, the children expressed an interest in living with her, Hosea was moving to Valparaiso, she was trained to deal with the children's special needs, and Hosea failed to obtain a tutor for Chrystal in a timely manner. The trial court found changed circumstances, and granted custody of the children to Nancy. Hosea appeals.

## DISCUSSION AND DECISION

When reviewing a custody modification decree, this court will reverse only if the trial court has abused its discretion. *Thompson v. Thompson* (1990), Ind.App., 550 N.E.2d 1332. In determining whether there is an abuse of discretion, we do not reweigh the evidence, judge the credibility of the witnesses, or substitute our judgment for that of the trial court. *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, *trans. denied.* If there is any evidence, or legit-

imate inferences therefrom, to support the trial court's judgment, this court will not disturb that judgment. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885. We will reverse, however, when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

■ IND.CODE 31–1–11.5–22(d) governs this dispute and provides:

The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances.

Thus, in order for a change of custody to be warranted, there must be a change in conditions from the date of the last order, and this change must be of such a decisive character as to make the change necessary for the welfare of the child. *Lucht v. Lucht* (1990), Ind.App., 555 N.E.2d 833, *trans. denied.* The trial court's crucial consideration when deciding custody questions is the best interests of the child. *Thompson, supra.* "Only a strict showing that the present custody arrangement is unreasonable will suffice to justify a change in custody." *Pea, supra,* at 113. This strict showing required by the statute is designed to prevent the disruptive effect of moving children back and forth between divorced parents. *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850.

■ The trial court's findings of fact contain the following observations concerning a change in conditions: Nancy has remarried, obtained her college degree, is employed full-time by the Marion Family Service Society, Hosea accepted a transfer from Wabash to a pastor's position in Valparaiso, Hosea earns $42,000 per year and lives in a five bedroom home in a nice

neighborhood, Josh is in need of counseling due to molestation incidents occurring prior to his adoption, Nancy has been trained through her employment to deal with special needs of children, and Chrystal appears to be adjusting poorly to her new school and new home in Valparaiso. The trial court then made the following conclusions of law:

> The evidence presented at trial revealed that NANCY'S circumstances have changed substantially in the last two years, all for the better. She not only has remarried and is living in a comfortable home, and employed full time, but is also trained to deal with special needs of children, such as the needs exhibited by her own children. Although the only change reflected in HOSEA'S lifestyle since October, 1987 is his move to Valparaiso, ostensibly a positive change, there is a great deal of evidence to substantiate NANCY'S feeling that HOSEA has not dealt appropriately with the children's physical and emotional needs over the last two years, such as taking them to doctors when required or buying them clothing when needed, or devoting the time required to their academic and extra curricular activities. No doubt, HOSEA'S position in the church consumes a large portion of his time. However, a custodial parent must sacrifice as much time as is required by his children, depending upon their special needs and circumstances.

> Expert testimony showed that Joshua has some emotional problems that need to be addressed, and have not been while HOSEA has had custody. Similarly, Crystal's academic performance, and emotional well being, seem to have suffered as a result of HOSEA'S move to Valparaiso. To be sure, the move was made for all the right reasons; unfortunately, however, the move appears to have effected (sic) Crystal adversely.

> Finally, NANCY, because of her employment and special training, seems now to be better equipped to deal with the special problems exhibited by Crystal and Joshua. She has also expressed an intention to devote more time to those needs than HOSEA has devoted since October, 1987.

> Based upon the evidence the Court concludes that the best interests of Crystal and Joshua require they be placed in the custody of NANCY.

*Record* at 153–154.

A large portion of the trial court's conclusions of law is based upon changes in Nancy's lifestyle. Typically, cases dealing with modification of child custody decrees are based on changes of circumstances respecting the custodial parent, although the noncustodial parent's circumstances are of course not irrelevant. *Pribush v. Roy* (1983), Ind.App., 456 N.E.2d 747, *trans. denied.* The fact that Nancy is now better equipped to deal with the children's special problems, which were evident prior to the dissolution, says nothing about Hosea's circumstances and lifestyle. A modification is not warranted if the evidence establishes a change only in the noncustodial parent's lifestyle. *Pea, supra.* We must look to the changes in Hosea's circumstances to determine whether the trial court abused its discretion in modifying custody.

■ The trial court first indicated "the only change reflected in HOSEA'S lifestyle" has been the move to Valparaiso, a move the court found "was made for all the right reasons." *Record* at 153. As Hosea asserts, a custodial parent's move is not *per se* a substantial change in circumstances as to make that parent's continued custody unreasonable. *Poret, supra.* The trial court also concluded Chrystal has been adversely affected by the move to Valparaiso. Although the trial court correctly found Chrystal was having difficulties in school, this was not a change in circumstances, as evidenced by the fact that Chrystal had problems in school for many years. There was no evidence to show Hosea was ignoring Chrystal's problems in school. In addition, Nancy testified

that Chrystal's problems with the move were "[t]ypical 13 year old issues and new girl in school issues." *Record* at 525. To find this to be a substantial and continuing change in circumstances would be to hold a move by the custodial parent is a *per se* substantial and continuing change, in contravention of established precedent. *See Poret, supra; Pea, supra.*

The trial court also concluded there was a great deal of evidence to substantiate Nancy's "feeling that HOSEA has not dealt appropriately with the children's physical and emotional needs over the last two years...." *Record* at 153. The court's findings do not justify this conclusion, however. The findings of fact basically reiterate the testimony of various witnesses, and do not take a stance on the evidence that was presented. Much of the findings are in the form of "Nancy mentioned" or "Nancy believes." *Record* at 149–152. The trial court's findings do not clearly establish which facts it found based upon a consideration of all the testimony and evidence. In addition, the record does not demonstrate that there is any evidence or legitimate inferences therefrom to support the trial court's decision to modify custody.

■ The record shows Nancy contended Hosea did not take Chrystal to an optometrist when Nancy felt Chrystal should go. There is simply no evidence to suggest that Hosea's failure to take Chrystal to an optometrist when Nancy told him to was detrimental to Chrystal in any way. Nancy herself testified the doctor initially attempted to discourage her from buying glasses for Chrystal. There is also no evidence to show Hosea was acting in a manner which would make the existing custody order unreasonable by failing to take Josh to counseling when and where Nancy felt Josh should go. The counselor to whom Nancy took Josh never told Hosea Josh needed counseling and never communicated with Hosea at all concerning Josh's counseling needs. Hosea did take Josh to see a pastoral counselor, Dr. Collie, after Nancy indicated Josh needed counseling.[2] There was simply no evidence to sustain a finding that Hosea was ignoring Josh's need for counseling. The counseling issue is not a substantial and continuing change making the existing custody order unreasonable.

Nancy made allegations that Hosea failed to take Josh to the doctor for various ear problems. Hosea did in fact, as Nancy acknowledges, take Josh to his general practitioner for treatment, and questioned other professionals concerning Josh's potential hearing problem. Because Hosea did not take Josh where and when Nancy wanted does not mean Hosea was mistreating the child such that there were substantial and continuing changes justifying a custody change.

There is no evidence that Hosea neglected the children's needs by failing to purchase clothing for them. Nancy testified that because she did not pay support, she has continued to buy the children clothing when they need something. "I tell their father and if he doesn't buy it by the next time I have visitation, I buy it." *Record* at 495. She testified she bought winter coats for the children in 1988 because Josh's coat had a broken zipper. This simply does not support the trial court's decision that the existing custody order was unreasonable.

■ Finally, the trial court stated Chrystal indicated in chambers that she wanted to live with Nancy. A child's desire to live with the noncustodial parent is an insufficient change of conditions to warrant modification of custody. *Pribush, supra.*

We do not find evidence or legitimate inferences from the evidence to support the trial court's decision. There was not a strict showing that the present custody arrangement was unreasonable. We reverse the decision of the trial court changing

---

**2.** The trial court stated in its findings that Dr. Collie "admitted he has not talked professionally with either child since 1987." *Record* at 150.

Dr. Collie testified, however, that he last saw the children in May of 1989. Nancy concedes the

custody from Hosea to Nancy.[3]

SHIELDS and STATON, JJ., concur.

trial court erred in stating Dr. Collie had not seen the children since 1987.

3. We recognize that the requirement of the strict showing is designed to prevent the disruptive effect of moving children back and forth between divorced parents, *Smith, supra,* and that our decision unfortunately causes another move for the children. That is not a sufficient basis for us to uphold the trial court's decision, however.