TAMARA L. PREECE (NARAGON), Appellant-Petitioner,
v.
MARK NARAGON, Appellee-Respondent.
No. 50A03-0606-CV-249
Court of Appeals of Indiana.
December 28, 2006.
EDWARD R. RUIZ, TIMI S. SLOAT, Morris & Ruiz, Plymouth, Indiana, ATTORNEYS FOR APPELLANT.
PETER L. ROCKAWAY, Rockaway Law Office, P.C. Plymouth, Indiana, ATTORNEY FOR APPELLEE.

MEMORANDUM DECISION
NAJAM, Judge.

STATEMENT OF THE CASE
Tamara Preece ("Mother") appeals from the trial court's order granting the petition to modify custody filed by Mark Naragon ("Father"). Mother presents a single issue for our review, namely, whether the trial court abused its discretion when it granted Father's petition to modify custody.
We affirm.[1]

FACTS AND PROCEDURAL HISTORY
Mother and Father married in 1996 and divorced in 2003, and the dissolution court awarded Mother custody of the parties' only child, R.N., born September 20, 1997. Thereafter, Father remarried, and his new wife, Danica, developed a strong bond with R.N. Mother also remarried, became pregnant, and separated from her husband, Bo Preece, within one year. Mother has been married four times and has had children with three of her husbands. Since the parties' divorce, R.N. has lived with Mother and her half-siblings. Father has consistently exercised visitation with R.N. from Wednesday through Sunday every other week and Wednesday nights on alternating weeks.
On April 6, 2005, Father filed a Petition to Modify Custody. Jill Uceny, a social worker with Brighter Tomorrows, Inc., conducted interviews with Father, Mother, Danica, R.N., and R.N.'s half-siblings and prepared an evaluation report, which was submitted to the trial court. Uceny concluded as follows:
It is recommended [Father] be considered for the primary care of [R.N.] at this time. He can offer to [R.N.] the stability in the marital relationship of the family unit, the focused attention and support for all of her interests and activities as well as the very close father/daughter bond. It is recommended [Mother] have the amount of time with [R.N.] for visitation that [Father] has presently so that [R.N.] will have more than the normal amount of contact with her half-siblings so that whatever closeness is there for them presently will be maintained.
Appellant's App. at 39.
On March 30, 2006, the parties appeared for a hearing on Father's petition to modify custody. Father, Mother, and several witnesses testified. After taking the matter under advisement, the trial court entered its order granting Father's petition to modify custody, which provides in relevant part:
2. There has been a change of circumstances so substantial and continuing that it is in [R.N.]'s best interest that the Father have her physical custody. The factors leading to this conclusion are as follows:
A. Since the last order regarding custody, the Mother was married, separated and had another child which is a consistent pattern in her life thus far;
B. All factors noted in the custody evaluation report; and
C. The stable home environment of the Father.
Appellant's App. at 40. Mother now appeals.

DISCUSSION AND DECISION
Mother asserts that the trial court abused its discretion when it granted Father's petition to modify custody because Father failed to present any evidence of a substantial and continuing change in circumstances that would justify a change in custody. In addition, Mother contends that the evidence does not show that modification of custody is in R.N.'s best interest. We cannot agree.
We review custody modifications for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." Apter v. Ross, 781 N.E.2d 744, 757 (Ind. Ct. App. 2003) (quoting Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002)), trans. denied. When reviewing a trial court's determination to modify custody, we may not reweigh the evidence or judge the credibility of the witnesses. Leisure v. Wheeler, 828 N.E.2d 409, 414 (Ind. Ct. App. 2005). Rather, we consider only the evidence most favorable to the judgment and any reasonable inferences from that evidence. Id.
Indiana Code Section 31-17-2-21 provides in relevant part:
(a) The court may not modify a child custody order unless:
(1) the modification is in the best interests of the child; and
(2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.
(b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.
And Indiana Code Section 31-17-2-8 provides:
The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:
(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
(A) the child's parent or parents;
(B) the child's sibling; and
(C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
(A) home;
(B) school; and
(C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.
This court explained the noncustodial parent's burden of proof in a custody modification proceeding in Simons v. Simons, 566 N.E.2d 551, 554-55 (Ind. Ct. App. 2001), as follows:
In an action to modify a custody order, the noncustodial parent seeking custody has the burden of establishing that the original or existing custody order should be modified due to a substantial and continuing change in circumstances. In a modification hearing, the trial judge must consider the evidence with the best interests of the child or children uppermost in his or her mind as the paramount concern. With regard to a decision to modify a child custody order, the trial court must determine that the changed circumstances warranting modification must be of a decisive nature and such changed circumstances will support a modification order only if such order is necessary for the welfare of the child or children involved, thereby conclusively establishing that the existing custody order is unreasonable.
* * *
The noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of [a] child custody order; the noncustodial parent must show that changed circumstances regarding the custodial parent's stability and the child's well-being are substantial and continuing.
Here, Mother contends that the trial court "failed to look at all relevant factors and furthermore neglected to thoroughly examine[] those factors outlined in Indiana Code [Section] XX-XX-X-X." Brief of Appellant at 8. We cannot agree. The evaluation report prepared by Uceny addresses each of the statutory factors, and the trial court relied on that report in making its determination. For instance, with respect to R.N.'s wishes, Uceny observed that R.N. had written notes to Father over the course of a year expressing her desire to live with him. In addition, some of the testing Uceny conducted showed that R.N. favors Father over Mother in the areas of competency, supportiveness, and follow-up consistency.
Uceny also observed the following with respect to R.N.'s interaction and interrelationship with her parents: Mother was working three different jobs until recently, and R.N. spent a lot of time with several different babysitters; Mother described R.N. as a "spoiled brat" and a "snotty little princess" after visiting with Father; R.N. stated that Mother made her watch horror films; R.N. likes to hold hands with Father and Danica when she is with them; Danica has served as "room mother" at R.N.'s school; and R.N. has referred to Danica as her "real mom." Appellant's App. at 27, 29. As to R.N.'s interaction and interrelationship with her siblings, Uceny stated: R.N. reported that her brother "pushed her down the stairs of the bunk beds," R.N. reported that "everybody treats her like a slave" at Mother's house; and her siblings were physically abusive to her and threatened her with physical abuse. Id. at 28. Finally, Uceny concluded that R.N. "did not show any closeness to her half-siblings in any notable way throughout this evaluation process." Id. at 39.
In addition, in the evaluation report, Uceny stated that the notes R.N. had written to Father over the course of a year "are very telling of where [R.N.] finds her greatest sense of security and safety. She feels totally safe with her dad, and she does not always feel that way at her mom's house." Id. Uceny concluded that Father should have physical custody of R.N. because "[h]e can offer to [R.N.] the stability in the marital relationship of the family unit, the focused attention and support for all of her interests and activities as well as the very close father/daughter bond." Id.
We conclude that the trial court's findings and conclusions are amply supported by the evidence presented at the hearing on Father's petition to modify custody. The evidence supports the trial court's determination that there has been a change in circumstances so substantial and continuing that it is in R.N.'s best interest that Father be awarded custody. Mother's contentions on appeal amount to a request that we reweigh the evidence, which we will not do. The trial court did not abuse its discretion when it awarded Father primary custody of R.N.
Affirmed.
MAY, J., and MATHIAS, J., concur.
NOTES
[1] We remind Mother's appellate counsel that Indiana Appellate Rule 50(A)(2)(d) provides that only relevant portions of the transcript shall be included in the appendix on appeal. It appears that counsel included the entire transcript in the appendix, which is inappropriate.